IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-00261-02-CR-W-RK |
| | ) | |
| FRANCIS CHENYI, SR., | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Chenyi's Motion to Dismiss [Counts One and Two of the] Indictment (Doc. #108). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On November 18, 2022, the Grand Jury returned a four-count Indictment against defendants Claude Ngenevu Chi, Francis Chenyi, Sr., and Lah Nestor Langmi. The Indictment charges all defendants with Conspiracy to Provide Material Support or Resources (Count One), Receiving Money From a Ransom Demand (Count Three), and Conspiracy to Launder Monetary Instruments (Count Four). Defendants Chi and Chenyi are also charged with Providing Material Support or Resources (Count Two).

Counts One and Two are the subject of defendant Chenyi's motion to dismiss. These two counts provide in part:

COMMON ALLEGATIONS

* * *

4.  Beginning at a date unknown but no later than January 1, 2018, and continuing until the present, the defendants supported and raised funds for separatist fighters in an ongoing Cameroonian rebellion. The defendants each held senior level positions within an organization that supported and directed the militant separatist group known as the Ambazonian Restoration Forces (ARF) and other separatist fighters within Cameroon's Anglophone regions. The defendants solicited and raised funds for equipment, supplies, weapons, and explosive materials to be used in attacks against Cameroonian government personnel, security forces, and property, along with other civilians believed to be enabling the government. These funds were raised through online chat applications and payment platforms from individuals located in the United States and abroad. The funds were then transferred from various financial and cryptocurrency accounts controlled by the defendants through intermediaries to the separatist fighters to support attacks in Cameroon.

5.  In addition to the funds that were raised through voluntary donations, the defendants conspired with others to kidnap civilians in Cameroon and hold them for ransom. In some instances, United States citizens were extorted for ransom payments to secure the release of their kidnapped relatives living in Cameroon. These ransom demands were couched as fines for violating rules imposed by the separatist groups and contributions to the separatist cause. In at least one instance, the defendants coordinated and personally received the ransom payment from a U.S.-based victim and informed the kidnappers located in Cameroon when the ransom payment was received. The ransom payments were subsequently transferred to the separatist fighters to fund their operations.

MANNER AND MEANS OF THE CONSPIRACY

6.  Beginning on a date unknown but no later than January 1, 2018, and continuing until the present, the defendants funded and directed separatist fighters operating in and around Ngo-ketunjia Division, Cameroon ("Ngoketunjia County"). CHENYI acted as the County Chair for Ngoketunjia County. LANGMI acted as the chairman of the Ngoketunjia Security Council, the defense Spokesman for the Ambazonia National Security Council (ANSC), and the chairman of the Balikumbat Local Government Area (LGA) Security Council. CHI acted as the treasurer of the Ngoketunjia Security Counsel and as the Chairman of the Ndop LGA Security Council.

7.  Beginning at a date unknown but no later than January 1, 2018, and continuing until the present, the defendants raised over $350,000 in donations primarily from donors in the United States and Europe. These funds were used to

support the operations of the ARF and other separatist fighters operating in and around Ngoketunjia.

8. The defendants authored a document titled "2020 End of Year Statement Ngoketunjia County", which documented their organization's accomplishments, income, and expenses. According to these records, the defendants raised $88,455.00 in 2020. Itemized expenses included at least ten (10) entries related to Improvised Explosive Devices (IEDs) and ten (10) entries related to firearms or ammunition. Other expenditures included funds related to specific separatist operations, including the kidnapping of a traditional leader named Sehm Mbinglo II (holding the title of Fon, or leader, of the Nso people) and Cardinal Christian Tumi on November 5, 2020.

* * *

10. On June 2, 2020, CHI sent CHENYI a message requesting funds for an unindicted conspirator known as "Captain Fire" (later "General Fire") for an attack against various government and civilian buildings in Ndop, Cameroon. The targets included:

 a. Ministry of Economy, Planning and Regional Development (MINEPAT);
 b. Ndop Community Hall;
 c. Royal Garden;
 d. Special Branch Police Station;
 e. Legal Department;
 f. Grandstand, new and old; and
 g. New Divisional Officer (D O) Office.

The cost estimate for the materials was 574,000 Central African CFA francs (XAF). Ngoketunjia County expense reports included a June 9, 2020, entry for this expense titled, "NDOP LGA Mission Logistics" for 575,000 XAF. On June 21, 2020, Captain Fire sent CHI five photos of buildings in early stages of fire, stating, "The new D O office," and "The last office down." CHI responded, "Confirmed our able Captain."

* * *

16. On January 11, 2021, CHENYI sent the Bamessing Action Team group a list titled "Materials [for] 5 Explosives," which included:

 a. Five gas bottles;
 b. three buckets gun powder;
 c. five batteries;
 d. five relays; and
 e. five remote systems.

3

CHENYI then sent the conspirators a picture and video of IED components, including remote firing systems and electric igniter wires. CHENYI subsequently sent an image of a transfer receipt for 200,000 XAF with the message, "Advance for the project." The General responded, "Received thanks."

17. On January 30, 2021, the General sent the Bamessing Action Team group a message stating, "On [January 28, 2021] the Bamessing action group ambuched Ndawara military and there was a number of casualties on their side.i could not have reported because I wanted a clear info about their dead.so we confirmed today morning." An unindicted conspirator responded, "Good but bro remember we need 1 with popcorn [IED] video so we can account to those who sponsored us." CHI responded, "more grease to your elbows Gen."

* * *

## COUNT ONE

(Conspiracy to Provide Material Support or Resources)

* * *

20. Beginning on a date unknown but no later than January 1, 2018, and continuing to the present with the exact dates being unknown, in the Western District of Missouri and elsewhere:

CLAUDE NGENEVU CHI
FRANCIS CHENYI, SR.
LAH NESTOR LANGMI

the defendants herein, and other persons known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree with each other, to provide and attempt to provide material support and resources, as defined in Title 18, United States Code, Section 2339A(b), including: currency and monetary instruments (collectively "money"), property, weapons, and services, knowing and intending that such money, property, weapons, and services were to be used in preparation for, and in carrying out, violations of Title 18, United States Code, Sections 956(a), Conspiracy to Kill, Kidnap, and Maim Persons in a Foreign Country; and 2332a(b), Conspiracy to Use a Weapon of Mass Destruction Outside of the United States.

All in violation of Title 18, United States Code, Section, 2339A(a).

# COUNT TWO

* * *

22. On or about December 3, 2020, within the Western District of Missouri, and elsewhere, the defendants,

CLAUDE NGENEVU CHI
FRANCIS CHENYI, SR.

did unlawfully and knowingly provide and attempt to provide material support and resources, to wit: 310,000 Central African CFA francs (XAF), knowing and intending that the material support and resources were to be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 2332a(b), Conspiracy to Use a Weapon of Mass Destruction Outside of the United States.

All in violation of Title 18, United States Code, Sections 2339A(a) & 2.

(Doc. #1 at 2-8.)

The statute under which defendant Chenyi is charged in Counts One and Two of the Indictment, 18 U.S.C. § 2339A(a), **Providing material support to terrorists**, provides:

> **(a)** **Offense.**—Whoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of section . . . 956, . . . [or] 2332a . . . of this title . . . or in preparation for, or in carrying out, the concealment of an escape from the commission of any such violation, or attempts or conspires to do such an act, shall be fined under this title, imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. A violation of this section may be prosecuted in any Federal judicial district in which the underlying offense was committed, or in any other Federal judicial district as provided by law.

18 U.S.C. § 2339A(a).

The other statutes referenced in Count One (18 U.S.C. §§ 956(a) and 2332a(b)) and Count Two (18 U.S.C. § 2332a(b)) provide:

### § 956. Conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country

**(a)(1)** Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be punished as provided in subsection (a)(2).

**(2)** The punishment for an offense under subsection (a)(1) of this section is—

**(A)** imprisonment for any term of years or for life if the offense is conspiracy to murder or kidnap; and

**(B)** imprisonment for not more than 35 years if the offense is conspiracy to maim.

18 U.S.C. § 956(a).

### § 2332a. Use of weapons of mass destruction

\* \* \*

**(b)** **Offense by national of the United States outside of the United States.**-- Any national of the United States who, without lawful authority, uses, or threatens, attempts, or conspires to use, a weapon of mass destruction outside of the United States shall be imprisoned for any term of years or for life, and if death results, shall be punished by death, or by imprisonment for any term of years or for life.

18 U.S.C. § 2332a(b).

## II. DISCUSSION

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." This Constitutional requirement is implemented by Rule 7(c)(1) of the Federal Rules of Criminal Procedure which specifies that "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The Eighth Circuit has set forth the following standard of review regarding a motion to dismiss based upon the

sufficiency of an indictment:

> An indictment adequately states an offense if "it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted."

*United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008) (quoting *United States v. Hernandez*, 299 F.3d 984, 992 (8th Cir. 2002)). Stated another way, an indictment is normally sufficient if its language tracks the statutory language and is accompanied with a statement of the facts and circumstances to inform the accused of the specific offense, coming under the general description, with which he is charged. *See Hamling v. United States*, 418 U.S. 87, 117-18 (1974).

Defendant Chenyi contends that Counts One and Two of the Indictment (which charge crimes set out in the chapter of the United States Code entitled "Terrorism") should be dismissed because this case is not about terrorism. (Motion to Dismiss Indictment at 1-2; Doc. #108.) "Rather, this case involves an ongoing and tumultuous political conflict for the people of Cameroon's independence and [defendant Chenyi's] people's self-determination and sovereignty," which presents nonjusticiable political issues. (*Id*. at 2 and 3.) Defendant Chenyi further asserts that he is entitled to a lawful combatant immunity affirmative defense under applicable international law. (*Id*. at 1.) Finally, defendant Chenyi maintains that 18 U.S.C. § 2339A in unconstitutionally vague for failing to define terrorism. (*Id*. at 10.)

In *United States v. Moalin*, 973 F.3d 977, 1006 (9th Cir. 2020), the court set out the following elements that the government must prove for a charge brought pursuant to 18 U.S.C. § 2339A(a) (such as that charged in Count One of the instant case): (1) the defendants entered

7

into a conspiracy; (2) the objective of the conspiracy was to provide material support or resources; and (3) the defendants knew and intended that the material support or resources would be used in preparing for, or in carrying out, a conspiracy to kill persons in a foreign country (18 U.S.C. § 956) or a conspiracy to use a weapon of mass destruction outside of the United States (18 U.S.C. § 2332a(b)). *See also United States v. Hodzic*, No. 4:15 CR 49 CDP/DDN, 2016 WL 11578530, at *2 (E.D. Mo. Aug. 22, 2016)[1] ("The essential elements of the [conspiracy to provide material support] offense are . . . that defendant(s) (1) knowingly conspired (2) to provide material support or resources, (3) knowing and intending that the support and resources were to be used in carrying out a violation of [18 U.S.C. § 956[2]].") The *Hodzic* court also set out the elements that the government must prove for a charge brought pursuant to 18 U.S.C. § 2339A(a) (such as that charged in Count Two of the instant case) as follows: "that . . . defendants (1) knowingly and willfully provided and attempted to provide (2) material supplies and resources, (3) knowing and intending that such support was to be used in preparation for, and in carrying out, a violation of 18 U.S.C. § 956(a)."[3] *Id.* at *3. "Providing Material Support to Terrorists in violation of 18 U.S.C. § 2339A and conspiracy to do the same, do not include any element related to 'terrorism.'" *United States v. Leveille*, Case No. 1:18-cr-2945-WJ, 2023 WL 5043875, *3 (D.N.M. Aug. 8, 2023) (citing *United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) (for elements of 18 U.S.C. § 2339A)).

---

[1] This Report and Recommendation was adopted by the District Court, *United States v. Hodzic*, 355 F.Supp.3d 825 (E.D. Mo. 2019), and then affirmed by the Circuit Court, *United States v. Harcevic*, 999 F.3d 1172 (8th Cir. 2021).

[2] In the instant case, 18 U.S.C. § 2332a(b) would also be included.

[3] In the instant case, 18 U.S.C. § 956(a) would be substituted with 18 U.S.C. § 2332a(b).

The Court finds Counts One and Two of the instant Indictment sufficient as these counts use the language of the statute and contain all the essential elements of the offenses charged. Further, Counts One and Two (and the introductory paragraphs of the Indictment which they incorporate by reference) fairly inform the defendants of the charges against which they must defend and allege sufficient information to allow the defendants to plead a conviction or acquittal as a bar to a subsequent prosecution.

With respect to defendant Chenyi's argument that Counts One and Two should be dismissed because this case does not involve terrorism, the Court finds that the statute under which the defendants are charged in Counts One and Two, 18 U.S.C. § 2339A(a), does not require a "a connection between defendants and [a foreign terrorist organization]." *See Hodzic*, 2016 WL 11578530, at *10. In *United States v. Omar*, 786 F.3d 1104 (8th Cir. 2015), the Court discussed the difference in charges brought pursuant to 18 U.S.C. § 2339A(a) and § 2339B(a)(1). For a charge under section 2339A(a), **Providing material support to terrorists**, the government must establish that a defendant "provided material support or resources 'knowing or intending' that this support would be used in preparation for or in carrying out a conspiracy to murder or maim persons in a foreign country."[4] *Id*. at 1112. There is no language in section 2339A(a) that would require the government to prove that the material support or resources went to or were intended for a group designated as a terrorist organization. However, such language does appear in section 2339B(a)(1), **Providing material support or resources to designated foreign terrorist organizations**,[5] a statute the defendants in the instant case are not charged with

---

[4]The charge in *Omar* referenced 18 U.S.C. § 956(a)(1)).

[5]Section 2339B(a)(1) states: "To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization . . ., that the organization has engaged or engages in terrorist activity . . ., or that the organization has engaged or engages in terrorism."

violating. Given that section 2339A(a) focuses on the offense of providing support for specific enumerated crimes (in this case—conspiring to kill, kidnap, or maim persons in a foreign country and using a weapon of mass destruction outside of the United States), rather than the offense of providing support to persons designated as terrorists, the Court finds that defendant Chenyi's argument that this Court is without jurisdiction to make a political issue determination regarding the nature of the rebellion in Cameroon to be irrelevant since the Court need not make any such determination in ruling on the legal sufficiency of the allegations in the Indictment.

Defendant Chenyi next argues that dismissal of Counts One and Two is warranted because he is shielded from prosecution by the doctrine of lawful combatant immunity in that he supported fighters who were lawful combatants. Defendant Chi asserted the defense of lawful combatant immunity for purposes of considering the weight of the evidence against him with respect to the issue of pre-trial detention. In an Order denying defendant Chi's appeal of his detention, the Honorable Roseann A. Ketchmark stated:

> In the instant detention appeal, Chi primarily argues that the alleged violent uses of force by the ARF in Cameroon, when placed in a proper historical context – that is, as part and parcel of a secessionist movement or civil war to secure the right to self-determination for certain Anglophone regions of the country – are internationally recognized lawful uses of force. Stated another way, Chi argues he is entitled to the affirmative defense of lawful combatant immunity. *See United States v. Harcevic*, 999 F.3d 1172, 1179 (8th Cir. 2021) (recognizing this affirmative defense). In response, the Government asserts that under the Third Geneva Convention, the lawful combatant defense applies only to international armed conflicts. (Doc. 93 at 10 (citing *United States v. Hamidullin*, 888 F.3d 62 (4th Cir. 2018).) In support of his argument that this defense applies in this case, Chi points to *Harcevic* in which the Eighth Circuit (in dicta) questioned whether the Third Geneva Convention "precludes a signatory from extending lawful combatant immunity to combatants in a specific non-international conflict." 999 F.3d at 1178.
>
> On this point, the Court finds persuasive the underlying district court opinion which the Eighth Circuit in *Harcevic* affirmed on other grounds. *See*

---

*See also Omar*, 786 F.3d at 1113.

10

Case 4:22-cr-00261-RK    Document 126    Filed 08/01/24    Page 10 of 13

> *United States v. Hodzic*, 355 F.Supp.3d 825 (E.D. Mo. 2019), *aff'd on other grounds sub nom. Harcevic*, 999 F.3d 1172. As to the lawful combatant immunity defense, the district court found the defendant – similarly charged under § 2339A for material support and resources to terrorists by supporting a third person fighting in the Syrian civil war – could not rely on the affirmative defense because the underlying conflict was not an international armed conflict. *Hodzic*, 355 F.Supp.3d at 828-29 (relying on *Hamidullin*); *see also United States v. Pineda*, No. 04-232 (TFH), 2006 WL 785287, at *3 (D.D.C. Mar. 28, 2006) (rejecting argument that defendant – charged with conspiracy to provide material support of terrorists as to the Fuerzas Armadas Revolucion Arias De Columbia (FARC) in the Republic of Columbia – was entitled to lawful combatant immunity because the conflict was not international in character involving two or more signatory nations). In any event, even looking to the Eighth Circuit's dicta in *Harcevic*, at most, to the extent the Third Geneva Convention does not preclude a signatory nation from extending lawful combatant immunity to a non-international conflict, there is no indication that the United States has done so specifically as to the non-international conflict in Cameroon involving this conspiracy and the ARF.

(Doc. #101 at 4.) As set forth above, Judge Ketchmark found persuasive the district court's opinion in *United States v. Hodzic*, 355 F.Supp.3d 825 (E.D. Mo. 2019). In that opinion, the court concluded "that because [the combatant] was fighting in a non-international armed conflict . . . these defendants are not entitled to assert the defense of lawful combatant immunity." *Id.* at 826. As the combatants in the case before this Court were fighting in a non-international armed conflict, the lawful combatant immunity defense does not provide a basis for dismissal of Counts One and Two of the Indictment.

Finally, with respect to defendant Chenyi's argument that 18 U.S.C. § 2339A(a) is unconstitutionally vague for failing to define terrorism, the Court finds *United States v. Abu Khatallah*, 151 F.Supp.3d 116 (D.D.C. 2015), persuasive. The *Abu Khatallah* court denied a void-for-vagueness challenge stating:

> . . . Although Abu Khatallah is correct that the material-support statute may have been designed to punish activity connected to terrorism, an association with terrorism is not an element of the crime defined by § 2339A. As the Government submits, criminal liability under § 2339A attaches regardless of any linkage to terrorism. As a result, the statute need not provide any notice of what constitutes

11

> "terrorism" to survive a void-for-vagueness challenge under the Due Process Clause.
>
> * * *
>
> . . . Conviction under § 2339A does not require proof of terrorist conduct—only proof of material support in preparation for, or in carrying out, at least one of an enumerated set of violent offenses.
>
> Because § 2339A does not include terrorist conduct as an element of criminal liability, the Court will deny Abu Khatallah's void-for-vagueness challenge that the statute provides inadequate notice of what constitutes terrorism.

*Abu Khatallah*, 151 F.Supp.3d at 139-40. *See also United States v. Leveille*, Case No. 1:18-cr-02945-WJ, 2023 WL 184114, *6 (D.N.M. Jan. 13, 2023) ("The Court agrees with the district court in *Abu Khatallah* that Section 2339A is unambiguous, that its title does not limit the scope of its text, and that it does not require a connection to terrorism—nor is such a connection necessary to avoid vagueness problems.")

### III. CONCLUSION

Counts One and Two of the Indictment track the statutory language of the offenses charged, fairly inform the defendants of the charges against which they must defend, and allege sufficient information to allow the defendants to plead a conviction or acquittal as a bar to a subsequent prosecution. The details provided in the Indictment adequately inform the defendants of the nature of the charges against them with sufficient precision to enable the defendants to prepare for trial and to prevent or minimize the element of surprise at trial.

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Chenyi's Motion to Dismiss Indictment (Doc. #108).

12

Case 4:22-cr-00261-RK    Document 126    Filed 08/01/24    Page 12 of 13

The parties are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

*/s/ Lajuana M. Counts*
Lajuana M. Counts
United States Magistrate Judge